Cullen, J.
This is an appeal from the decree of the surrogate admitting to probate the will of William Smith. The record presents the dreary history of family contentions and quarrels not infrequent in this class of litigation. It shows that in such quarrels the deceased took the side of some of his children against the others, possibly that he took the wrong side, and that as a result of the feeling arising out of this, the will is unequal, and favors some of *138 the children to the exclusion or detriment of the others; but I think the effect of the evidence does not go beyond this., The factum of the will, and the competency of the testator, are practically conceded. The substantial attack ■on the will is, that it was the result of undue influence on the part of two of his daughters.
The testator for some years before his death was a widower, his family consisting of three daughters and a son, .all but one daughter, Mary Miekurs, residing with him. The eldest daughter, Fanny, from the time of her mother’s death, was the head of the household. Contentions arose between this daughter and a younger one, Louisa, increasing in bitterness till December, 1880, upon the marriage of the younger daughter, the strife culminated, and the eldest ■daughter, Fanny, left the father’s house, to which she never returned. At the time of her departure, she took with her what she claims as her own property, and received the amount of a claim against her father. The son, who had managed the farm, left home at the same time as his sister, taking with him what he claimed to own of the farm stock.
In 1882, two years before his death, the deceased made his will, devising to his two daughters, Mary and Louisa, parts of the farm in fee, the other part to his son; as to this part, subject to the condition that if the son died without issue, it should revert to the two daughters. This farm was substantially the whole of the testator’s property.. The daughter Fanny, who was thus disinherited, does not •contest the will. The contest is made by the son.
This will is shown to have been drawn under the express directions of the testator. He took the lawyer over the farm and pointed out the particular lines by which the farm was to be divided. In these instructions neither of the favored daughters took part. The only connection either is shown to have had with it was that Mrs. Miekurs sent for the lawyer, her husband’s cousin, to draw up the will. He came from the city, received the testator’s instructions, returned, drew the will and mailed it to the daughter Louisa. The testator procured the attendance of the witnesses to its execution, which was had at his own home.
We find nothing in this case to indicate undue influence on the part of the daughters. That there was opportunity for such influence is not enough; it must be shown that the influence was actually exercised. True, such influence' is not often the subject of direct proof, but the facts and circumstances must tend to establish it. We think this case barren of any facts from which the inference could justly be drawn. The will was not unnatural in the light of the position the father had taken in the previous family *139 dissensions. That he was wrong in the position he had taken, matters not. He was the judge to determine his own course, not the courts.
Several errors occurred in rulings of the surrogate as to the admission of evidence, but the errors did not go to the merits and could not have effected the result. Hence they do not afford ground for reversing the decree. Hoon v. Pullman, 72 N. Y., 269.
The decree of the surrogate should be affirmed with costs. Barnard, P. J., and Dykman, J., concur.